CHARLES H. MILLER *v.* ZONING BOARD OF APPEALS OF THE CITY OF HARTFORD

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued March 5—decided March 25, 1952

*Robert K. Killian,* with whom were *Frank A. Murphy* and, on the brief, *Samuel Gould,* for the appellant (defendant).

*Harold Strauch,* with whom was *Arthur M. Lewis,* for the appellee (plaintiff).

INGLIS, J.   The defendant, hereinafter referred to as the board, denied the plaintiff's application for a certificate of approval of his property as a location for the sale, display and repair of new and used motor vehicles and for the conduct of a motor vehicle junk yard.   Upon the plaintiff's appeal to the Court of Common Pleas, judgment was rendered sustaining the appeal and reversing the action of the board.   The sole question before us is whether the trial court erred in rendering that judgment.

Upon the evidence before it, the board might reasonably have found the following facts: The property in question is located on the easterly side of Wethersfield Avenue in Hartford very near to the Wethersfield boundary.   It has a frontage of 509 feet and a depth of about 765 feet.   The front portion of the land to a depth of about 130 feet at the north and of about 210 feet at the south is zoned for business.   The rear land is in an industrial zone.   The plaintiff intends to construct a passway 20 feet in width easterly from Wethersfield Avenue into the property.   He proposes to use that portion of the land south of the passway which is in the industrial zone, to a depth of about 380 feet from Wethersfield Avenue, for the display and sale of cars and trucks, and all of the remaining rear land as a motor vehicle junk yard.

Since Wethersfield Avenue is one of the main arteries of the city for north- and southbound traffic, the vehicular traffic in front of the premises is heavy. There are bus stops on each side of Wethersfield Avenue near the property. The neighborhood is largely residential. Several apartment buildings house a large number of families, including many children. There are two schools in the vicinity, the Dwight School some blocks north on Wethersfield Avenue and the Naylor School one block away on Franklin Avenue, which runs parallel with Wethersfield Avenue. St. Luke's Church is half way down the block on Eaton Street, which runs west from Wethersfield Avenue half a block away from the plaintiff's property.

The considerations which should control action on an application for approval of a location for a motor vehicle junk yard, although in the main the same, are somewhat different from those which should control with reference to an application for a certificate of approval of a motor vehicle sales lot. General Statutes §§ 4656, 2395. The plaintiff joined in the one application his request for a certificate of approval for both purposes. It is true that it would be proper under some circumstances to review the action on such an application as though it had been for separate certificates. *Mrowka* v. *Board of Zoning Appeals,* 134 Conn. 149, 151, 55 A. 2d 909. In the present case, however, the plaintiff apparently desires to conduct the sales lot and the junk yard as a single enterprise and is not asking approval for one without the other. In any event, in this litigation the parties have not treated the application as severable, nor shall we. The criteria by which, under the statute, an application for the approval of a location for a junk yard is to be tested are somewhat more rigid than those relating to a sales lot. The question before us, therefore, narrows down

to this: Did the board act arbitrarily, illegally or so unreasonably as to have abused its discretion in deciding that the property in question was not a suitable location for a motor vehicle junk yard? Upon this question the plaintiff had the burden of proof in the trial court. *Executive Television Corporation* v. *Zoning Board of Appeals*, 138 Conn. 452, 455, 85 A. 2d 904.

Section 4655 of the General Statutes requires, as a prerequisite to the issuance by the commissioner of motor vehicles of a license to operate a motor vehicle junk yard, a certificate of approval of the location from certain local officials. Section 4656 provides in part that the designated authority, in considering an application for a certificate, "shall take into account the nature and development of surrounding property; the proximity of churches, schools, hospitals, public buildings or other places of public gathering; the sufficiency in number of other such yards or businesses in the vicinity; the health, safety and general welfare of the public and the suitability of the applicant to establish, maintain or operate such yard or business and to receive a license therefor."

In the present case, the board had before it evidence which bore on all of the considerations specified in the statute except possibly the number of other such yards in the vicinity and the suitability of the applicant. There is nothing to indicate that the board did not weigh the evidence carefully. The plaintiff makes much in argument of the fact that, during the hearing, some members of the board indicated by their comments that they favored the granting of the application. It does not follow that there was any impropriety in the ultimate decision. It is no new experience for a trier to entertain a first impression which later, upon mature reflection, he becomes convinced was erroneous. That the defendant gave no reason for its action is of

no controlling significance where it appears, as here, that upon the facts no abuse of discretion was necessarily involved. See *Executive Television Corporation v. Zoning Board of Appeals,* supra.

The mere fact that the property in question was in an industrial zone did not entitle the plaintiff to a certificate of approval. A motor vehicle junk yard is an eyesore. To locate one in close proximity to property used for residential purposes might reasonably be considered something approaching a public nuisance. *State v. Kievman,* 116 Conn. 458, 465, 165 A. 601. The board might well have concluded that the residential character of the neighborhood made the place in question unsuitable for such a yard. It might also reasonably have concluded that the property was too close to two schools and a church, that a junk yard in that location would have an adverse effect on traffic conditions on Wethersfield Avenue and that it was not for the general welfare of the public that a junk yard be established on the property. It does not appear, therefore, that the board acted illegally, arbitrarily or in abuse of its discretion in denying the plaintiff's application.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion the other judges concurred.